————o————

## No. 6089.

## RAILWAYS REALTY CO. vs. WILLIS J. ROUSSEL, ET AL.

### Syllabus.

Articles 836 and 837, R. C. C.. relative to fixing the limits of lands, must be read together and mean nothing more than that the work of the surveyor shall not be final, but subject to review by the Courts; and accordingly he shall not set up any *permanent* bounds until the differences between the parties have been passed upon by these tribunals.

Appeal from the Civil District Court for the Parish of Orleans, Division "A," No. 104,314. Hon. T. C. W. Ellis, Judge.

McCloskey & Benedict and Dufour & Dufour, for plaintiff and appellant.

Lyle Saxon and W. W. Wall, for defendant and appellee.

Dinkelspiel, Hart & Davey, attorneys.

His Honor, JOHN ST. PAUL, rendered the opinion and decree of the Court, as follows:

This is an action in boundary. Surveyors having been appointed, and being about to proceed with this work, plaintiff protested that they should consider no other plan than a certain plan of 1831, being the one according to which defendants' lands are described.

Surveyors, however, did use other data and proceeded to do their field work and put up temporary marks. But before fixing the permanent bounds, they filed their **proces verbal** showing what they had done, setting forth the protest made by plaintiff, and submitting the matter to the Court.

To this report plaintiff excepted, contending that upon the receipt of their protest, the surveyors should have desisted at once and completely from their work, and referred the matter then and there to the Court, in accordance with Art. 837, C. C.

We think that Art. 837 must be read in connection with Art. 836; and taken together these two articles mean nothing more than that the work of the surveyor shall not be final, but subject to review by the Courts; and accordingly he must not set up the permanent bounds until the differences between the **parties** have been passed upon by these tribunals.

## On The Merits.

The actual issue in this case is to fix the limits of certain lots recognized as the property of defendants, by final judgment in a former suit between the same parties.

To fix those limits it was necessary to establish the point at which the west line of First Lake Street intersects the north line of the Genois tract, and the angle formed by these two lines.

The surveyors herein fixed this point and angle according to plans and surveys recognized as correct, and here-

tofore accepted and followed by practically every surveyor of the City of New Orleans; to-wit: D'Hemecourt, J. A.; Grandjean, G. H.; Fremeaux, L. J.; Pilie, Louis H.; Pilie, Edgar; Bell, W. H.; Bell, A. C.; Seghers, D. E.; Seghers, F W., and also by the engineers of the City of New Orleans and of the Sewerage & Water Board.

That is to say, they fix the point of intersection at 553 feet from the Bayou St. John, and the angle at 81° 28' 10".

Now according to the plan of 1831, which plaintiff insists should alone be used, that angle measures only 74° 15.' But by that same plan (which purports on its face to be drawn to scale and upon which distances can at least be approximated, if not absolutely fixed) the west line of First Lake Street is distant 404' 3" from Bayou St. John, as found by Grandjean in 1884 and recognized by a judgment of Court to which plaintiff's author in title was a party.

See **Heirs of Lavergne vs. New Orleans-Spanish Fort and Lake R. R. Co., No. 3278, C. D. C.**

Allowing for the width of First Lake Street (54 feet) this corresponds very nearly with the Celles plan of 1865, which gives the west boundary of the Hotel property as lying 348 feet from the Bayou St. John, and forming an angle of 74 degrees with the Genois line.

For, by following that boundary to the lake shore of that date (1865), we find the west line of the property was 419 feet from the Bayou at that point, and by extending that boundary northward we find that it would strike the line of the lake shore in 1831, a little more than 419 feet from the Bayou.

Now by the plan of 1830, the east line of lot No. 1 was 59 toises and 4 feet (equal to 358 feet A. M.), from the

— 257 —

Bayou; and adding the width of this lot, 64 feet A. M., we find that the west line of the lot, which is the east line of First Lake St. was distant 422 feet from the Bayou, measured along the lake front of 1830. So that the east line of First Lake Street according to the plan of 1831, coincides with the west boundary of the Hotel property on the Celles plan of 1865; and is therefore 150 feet nearer the Bayou than the surveyors have placed it (as testified to by F. W. Seghers, Surveyor). Hence to adopt the angles and measures of the plan of 1831, would be to fix defendants' lots about as we have traced them in blue pencil on the big plan known herein as the ''Lake Pontchartrain'' plan; that is to say to take more of plaintiff's land than defendants claim, and locate the lots even more disvantageously to plaintiff than defendants contend for.

It would also have the effect of putting defendants' lot No. 1, within the limits of the Celles plan, an issue heretofore tendered and decided adversely to plaintiff by this Court (on refusal of rehearing) and not even pressed before the Supreme Court.

It would have the further effect of changing the location and direction of Genois Street, as opened and used by the public for more than forty years, with the consent of plaintiff's author (see testimony of F. W. Seghers in this suit, and of General Glynn, in the former suit).

It would block every street at the Genois line, going either north or south, for the projected streets to the south of that line would be 150 feet from the streets to the north of that line.

And finally the plan of 1831, appears to have been drawn up in error, as found by our learned brother of the District Court, and his colleague who sat with him.

So that to adopt that plan of 1831, would result in no possible advantage to plaintiff (rather the contrary) and

— 258 —

bring about confusion in conditions that have existed many years, for no other reason than to follow blindly a plan that manifestly conflicts with the prior plan of 1830, by which the property had been originally laid out and the streets dedicated.

We think the judgment appealed from is correct.

Judgment affirmed.

Opinion and decree, May 18th, 1914.

Rehearing refused, June 15th, 1914.

Writ denied, October 26th, 1914.